# SUPERIOR COURT
## OF THE
# STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE  19901
302-735-2111

August 1, 2019

Gary E. Junge, Esquire
Schmittinger & Rodriguez, P.A.
414 South State Street
Dover, DE  19903

Paul A. Logan, Esquire
Post & Schell, P.C.
222 Delaware Ave., Suite 1500
Wilmington, DE  19801

RE:  *Town of Townsend v. Grassbusters, Inc., & Aegis Security Insurance Company*
*C.A. No. K15C-12-023 JJC*

Submitted:  July 16, 2019
Decided:  August 1, 2019

Counsel:

This letter provides the Court's decision regarding three defense motions *in limine*. Trial begins on August 12, 2019 and involves a contract and breach of warranty suit. Plaintiff Town of Townsend claims for repair and replacement costs for an allegedly defective sidewalk that Defendant Grassbusters, Inc. installed in town limits in 2014. Defendant Aegis Insurance Company issued a performance bond for the project, and Townsend sues Aegis in its capacity as a surety.

In their motions, Defendants first raise a challenge pursuant to *Daubert v. Merrell Dow*[1] regarding the opinion testimony offered by Townsend's liability

---

[1] 509 U.S. 579(1993).

expert, Frank Palise. Second, Defendants move to exclude references to a report authored by Dr. Hadi Rashidi, who was a co-worker of Mr. Palise, because Dr. Rashidi will not testify at trial. Third, Defendants seek to exclude evidence of the amount of damages suffered by Townsend because Townsend has no damages expert.

For the reasons discussed below, Defendants' motion to exclude Mr. Palise's testimony is **DEFERRED** until trial. Likewise, their motion to exclude references to Mr. Rashidi's report is also **DEFERRED** until trial. Finally, Townsend proffers no expert testimony regarding the reasonable costs necessary to repair the sidewalk. It also identifies no otherwise admissible evidence that would be legally sufficient to support a damage award to a reasonable degree of certainty. As a result, Defendants' motion to exclude evidence regarding damages must be **GRANTED**.

### Factual and Procedural Background and Arguments of the Parties

In 2013, Townsend sought bids for town improvements that included improvements to their curbs and sidewalks. It awarded Grassbusters the bid in the amount of $510,755. Grassbusters and Aegis then entered into a performance/payment bond in that amount. In its contract with Townsend, Grassbusters warranted that all work would be free from defects and that it would correct any defects in workmanship.

Grassbusters then performed the work in 2014. On May 19, 2015, Townsend's Mayor formally notified Grassbusters that portions of the concrete had rapidly deteriorated. He demanded that Grassbusters replace the defective portions. In support of the Mayor's demand, Townsend's contract engineer, Owen Hyne, prepared a sidewalk "inventory" and drafted an estimate for needed repairs. Townsend's Mayor then sent this estimate to Grassbusters. The repair estimate totaled $158,128.85.

2

Townsend filed suit in December 2015. It then hired Advanced Infrastructure Design ("AID") to perform material testing. Based in large part on an analysis performed by a third party, CTL Group, Dr. Rashidi of AID drafted a November 22, 2016 memorandum. In it, he offered opinions regarding the defective nature of Grassbuster's work. His opinions included that "the sampled concrete has excellent compressive strength at the center but is very weak and permeable within the top 0.6 in. from the surface." Dr. Rashidi based his opinions, in large part, upon CTL Group's analysis.

In discovery, Townsend identified a separate employee of Advanced Infrastructure Design, Frank Palise, as its sole expert witness. He authored a May 3, 2017 report that addressed liability related issues only. Mr. Palise's report in large part mirrored Dr. Rashidi's report. In Mr. Palise's report, he provided his general liability opinions to a "reasonable degree of scientific certainty." Townsend, however, identified no expert witness that will offer opinions regarding (1) the reasonable repair costs of the defective portions of the sidewalk, (2) what portions of the sidewalk need to be repaired, or (3) the scope of the necessary work.

Prior to trial, Defendants move to exclude Mr. Palise's opinions from evidence. They argue that he did not reach independent conclusions but rather parroted Dr. Rashidi's opinions. Since Dr. Rashidi will not testify, Defendants argue that Mr. Palise should be precluded from offering the opinions of another expert. Furthermore, Defendants challenge Mr. Palise's qualifications, the bases for his opinions, and whether his opinions meet *Daubert* standards as set forth in DRE 702.

Second, Defendants move to exclude any reference to Dr. Rashidi's report and the opinions recited in the report on primarily hearsay grounds. Defendants further argue that because Mr. Palise did not perform independent testing or analysis, excluding Dr. Rashidi's report requires excluding Mr. Palise's liability opinions.

Third, Defendants seek to preclude Townsend from offering evidence regarding damages. They emphasize that Townsend has no damages expert. Defendants argue that proving the repair cost for removal and replacement of defective concrete, particularly concrete that is only defective at its top .6 inches, requires specialized knowledge and skill. Secondarily, Defendants argue that even if Mr. Hyne, who authored the estimate, had been identified as more than a fact witness, he possesses no basis for either a lay or expert opinion.

When responding in writing to the third motion *in limine*, Townsend proffered no evidence of record substantiating its damages claim. At oral argument, Townsend acknowledged that it had secured no expert opinion addressing this aspect of its claim. Rather, as a basis for proving damages, Townsend argued that it could rely solely upon Mr. Hyne's lay testimony, together with the contract documents from 2014 that provided the total initial project costs. At the conclusion of the oral argument, the Court permitted Townsend to supplement the record by filing Mr. Hyne's deposition transcript together with the documentary evidence it seeks to rely upon. Townsend then provided the material to the Court.

First, Mr. Hyne testified in his deposition that he used no identifiable standards when identifying what portions of the sidewalk require repair. He also could not testify about measurements he took (1) to determine the required quantity of replacement concrete, or (2) the dimensions of the portions of the sidewalk that require repair. Furthermore, he could not identify his basis for estimating costs. He testified that he merely believed he had prepared his estimate based upon the initial contract's unit costs. Finally, he testified that he did not know what became of the notes he used to support his estimates.[2]

---

[2] The discovery deadline concluded in 2018 and Townsend offered no documentation of Mr. Hyne's work during discovery. After oral argument on this motion, for the first time, Townsend provided the Defendants and the Court a diagram of the sidewalk areas with notes identifying the dimensions of the areas Townsend alleges require replacement. Since Townsend did not (1)

4

Rather than support Mr. Hyne's estimate, the contract documents provide quantities and unit costs of concrete that do not even approximate the amounts Mr. Hyne references in his estimate. Townsend proffers no other evidence regarding how Mr. Hyne calculated the unit cost for the concrete's repair and replacement, or how he calculated the volume of the replacement concrete.

### Mr. Palise's Opinions and Dr. Rashidi's Memorandum

The matters raised in two of Defendants' motions are intertwined and are appropriately addressed together. Here, Dr. Rashidi and Mr. Palise's reports mirror each other to a large extent and rely upon the same facts and data in support of their conclusions. Opinions of a non-testifying expert are often excludable hearsay. On the other hand, Mr. Palise, as a testifying expert would be free to rely upon facts, data, and in some cases opinions compiled by others that he was "made aware of" when formulating his opinions.[3] The crux of Defendants' motions attacks the bases of Mr. Palise's opinions. Whether Mr. Palise independently reached his own conclusions apart from Dr. Rashidi's opinions is unclear from Mr. Palise's report. He relied upon some of the same underlying data, which would be acceptable. However, where he drew the line and to what extent he relied upon Dr. Rashidi's opinions is not clear on the present record.

Nevertheless, some of the issues Defendants raise may be addressed at this stage. At the outset, Mr. Palise is not a registered engineer. That is not fatal to his status as a construction expert. His *curriculum vitae* evidences specialized knowledge in the areas of asphalt and concrete composition and installation.

---

produce the diagram with recorded measurements during discovery or (2) identify it as a proposed exhibit in the pretrial stipulation, the Court will not consider it as part of the record. Even if it were included, it does not address the further deficiencies in the documentary evidence and lay testimony that make Mr. Hyne's lay opinion inadmissible.

[3] *See* D.R.E. 703 (providing such if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject….").

Furthermore, his potential reliance on facts and data gathered at the request of another expert from AID is not fatal. DRE 703 contemplates that an expert may base his or her opinion upon facts and data that the expert has "been made aware of."[4] A common example of this acceptable practice, for instance, is when a testifying medical expert relies upon medical records from another treatment provider. Such records often contain observations and diagnoses that, in turn, may support a testifying expert's opinion.[5] Nor are Mr. Palise's opinions inadmissible because they are rendered to a reasonable degree of scientific certainty.[6] The pattern jury instruction addressing the jury's role in weighing expert testimony adequately addresses what weight a jury is to give expert testimony, if any.

In addition to the matters discussed above, Defendants also challenge whether Mr. Palise's opinion testimony meets the requirements of DRE 702.[7] The Defendants chose not to depose Mr. Palise during discovery and many of the issues that Defendants raise cannot be resolved merely by reviewing Mr. Palise's report and CV. Because Mr. Palise was not deposed, and because it is not clear in his report to what degree, if any, he relies upon Dr. Rashidi's opinions, the Court will defer these *Daubert* issue until trial. Accordingly, Defendants may conduct *voir dire* outside the presence of the jury to address (1) DRE 702's requirements, (2) Mr. Palise's qualifications, and (3) the bases for his opinions. To that extent, the decision on these motions is **DEFERRED** until trial.

---

[4] *Id.*

[5] *See* D.R.E. 703 (providing that an expert can rely upon inadmissible facts or data so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."). Whether the facts or data are themselves admissible, must be determined after the Court performs the weighing function set forth in DRE 703. That also remain as a potential issue after a DRE 104(a) hearing.

[6] *See Barriocanal v. Gibbs*, 697 A.2d 1169, 1172, 1173 (Del. 1997), *as revised on denial of reh'g* (Sept. 9, 1997) (holding that the substance of an expert's testimony as a whole should be evaluated rather than requiring "magic words").

[7] D.R.E. 702.

6

Finally, with regard to the timing of the *voir dire*, Mr. Palise is Townsend's expert. Townsend may elect to present him for purposes of this DRE 104(a) hearing before opening statements, or to address the matter mid-trial, outside the presence of the jury. Townsend shall notify the Court no later than August 7, 2019 of its election so appropriate arrangements can be made for jury reporting. Until the motion is resolved, neither counsel nor witnesses may reference Mr. Palise's opinions or any aspect of Dr. Rashidi's memorandum.

## Expert Opinion Necessary For Damages

In this breach of contract and warranty action, Townsend bears the burden to prove its damages.[8] Assuming the jury finds a breach, Townsend would be entitled to the benefit of its bargain. In pursuing that remedy, it seeks repair costs. Specifically, it alleges that it will cost approximately $150,000 to repair the defective portions of the sidewalk.

When proving damages in a contract action, Townsend must do so to a reasonable certainty.[9] A jury cannot be left to speculate regarding the appropriate measure of damages.[10] In the event a Plaintiff proves a contractual breach, but fails to set forth a legally sufficient basis for a damages award, the Plaintiff may nevertheless recover nominal damages.[11]

Expert testimony is not required to advance opinions that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[12] It follows that lay opinion testimony is inadmissible if the opinion requires specialized experience or knowledge. A party's choice to forgo designating a

---

[8] *Coles v. Spence*, 202 A.2d 569, 571 (Del. 1964).

[9] *LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007), *aff'd*, 956 A.2d 642 (Del. 2008).

[10] *Id.*

[11] *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009).

[12] D.R.E. 701 (c).

7

witness as an expert carries accompanying consequences. These include limiting that witness's testimony to the layperson opinion limitations found in DRE 701.[13]

When considering the evidence proffered by Townsend, the reasonable repair costs necessary to remove and replace the allegedly defective sidewalk cannot be established without expert testimony. Such testimony would require scientific, technical or other specialized knowledge. Here, Townsend offers no expert testimony regarding the following: the unit cost of concrete; the scope of the work required; the volume of concrete necessary to be removed; the volume of concrete necessary to replace that which was removed; or how to calculate other components of cost of repair damages such as flagger costs. Given an identification of a stretch of defective sidewalk, with the primary identified defect being in the top .6 inches of the concrete, specialized knowledge would be required for a person to offer such opinions. Under the circumstances of this case, expert testimony would be necessary regarding (1) the scope of the work necessary to repair the sidewalk, (2) the costs necessary for removal of the concrete, and (3) the volume of replacement concrete necessary to repair the defects.

Townsend incorrectly argues that these matters are simply a jury question. Under the facts of this case, Townsend's position would require the jury to speculate regarding the appropriate amount of expectation damages. Asking a jury to do so would be inappropriate. Again, these matters require specialized knowledge as contemplated by DRE 701.

At the invitation of the Court, Townsend supplemented the record with the documents it proffers set forth a legally sufficient claim for damages absent expert testimony. At the center of Townsend's claim is a "project cost estimate" dated

---

[13] *See Shapira v. Christiana Care Health Services,* 99 A.3d 217, 223 (Del. 2014) (holding that when a party designates a witness as a "fact witness," they are bound by DRE 701).

June 12, 2015.[14] It includes a one-half page estimate of the quantities of concrete to be removed and replaced, and lumps them into a combined quantity.[15] Accordingly, the quantities in the estimate do not align to any degree with the quantities listed in the contract documents. Furthermore, the estimated unit costs (which the Court can only assume include the costs to remove and replace the sidewalk) are lumped into one and not explained. As with the issue of quantity, the costs in the estimate cannot be aligned with the costs listed in the original contract documents.

Townsend also seeks to admit evidence based on these documents through Mr. Hyne's fact testimony at trial. However, when deposed, Mr. Hyne could provide no bases for his estimates. He believed he based his estimate upon line items in the underlying contract but was unsure. Again, the approximately $500,000 contract does not include breakdowns of identifiable volumes, costs, or specific work. If something in the documents could be read to permit such an extrapolation, it would require an expert to do so. Furthermore, Mr. Hyne testified that he applied no standard when determining what should be replaced. He could only assume that he used the initial contract documents in preparing his estimate. In this regard, his lay opinion testimony is inadmissible because it is not "rationally based on the witness's perception" which is a separate requirement for admission of lay witness opinion testimony.[16] On balance, Townsend's proffers are legally insufficient to support a damages finding to any degree of certainty.

The Court's holding in this case should not be interpreted so broadly as to require expert testimony regarding repair costs in a defective construction case in all circumstances. Expert testimony may not be required, for instance, where an expert opines that the original work done had no value. Under that circumstance, the

---

[14] Hyne's Dep. Ex. No. 4.
[15] *Id.*
[16] *See* D.R.E. 701(a)(requiring this to admit lay opinion testimony).

original contract price may be admissible to prove damages as a total loss. Likewise, expert testimony quantifying a reasonable repair cost may not be required in circumstances where a plaintiff has already completed repairs at some fixed cost.

Neither of those avenues of proof are available in the case at hand, however. Here, the original contract price was for more than $500,000 for a variety of work that the contract documents do not break down to component levels sufficient to enable a layperson jury to comparatively parcel, allocate, and apply to Mr. Hyne's $158,128.85 estimate. On balance, Townsend offers no admissible expert opinion, lay opinion, fact testimony, or documentary evidence of record that would permit a jury to assess damages to a reasonable degree of certainty. Accordingly, Plaintiff Townsend's motion to exclude evidence of damages at trial must be **GRANTED.**

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge